# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1832V

| | |
|---|---|
| NICOLE FEY, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: July 26, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Julia Marter Collison*, U.S. Department of Justice, Washington, DC, for Respondent.

### **FINDINGS OF FACT**[1]

On December 11, 2020, Nicole Fey filed a petition[2] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving a tetanus diphtheria ("Td") vaccine on June 5, 2018. Amended Petition at 1, ¶ 2.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner filed an amended petition on August 18, 2022, to correct the date of vaccination. *Compare* Petition at 1, ¶ 2, ECF No. 1 *with* Amended Petition at 1, ¶ 2, ECF No. 35-1; Exhibit 1 at 4 (vaccine record).

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties dispute Petitioner's success in establishing sequela severity. For the reasons discussed below, I find the Petitioner continued to suffer the residual effects of her alleged SIRVA for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

## I.   Relevant Procedural History

Along with her petition, Ms. Fey filed some of the medical records required under the Vaccine Act. Exhibits 1-4, ECF No. 1; *see* Section 11(c). Over the subsequent two-month period, she filed the affidavit and remaining required medical records. Exhibits 5-8, ECF Nos. 7, 9-11. On February 26, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 13.

Thereafter, Petitioner continued to file updated medical records. Exhibits 9-10, ECF Nos. 22, 26. On March 24, 2022, Respondent raised a concern regarding the statutory six-month severity requirement due to "the more than six month gap between [P]etitioner's first physical therapy visit (November 13, 2018) . . . and second physical therapy visit (June 3, 2019)." Status Report, ECF No. 29.

After Petitioner confirmed she had not pursued treatment during the gap, Respondent indicated he intended to oppose compensation. On August 9, 2022, he filed his Rule 4(c) Report. ECF No. 34. He argues that Petitioner is not entitled to compensation because she "has not established that she suffered the residual effects or complications of an alleged vaccine injury for more than six months." *Id.* at 6.

In response, Petitioner filed updated medical records, an amended petition, a supplemental declaration,[4] and a motion for a ruling on the record finding that Petitioner had satisfied the severity requirement. Exhibits 11-12, ECF Nos. 33, 36; Amended Petition, ECF No. 35; Motion for Ruling on the Record ("Motion"), ECF No. 37. In her motion, Petitioner emphasizes the consistent medical histories she provided and her work as a chef with accompanying moves and occasional lack of insurance. Motion at 6-9.

On October 18, 2022, Respondent filed a response to Petitioner's motion. Response to Motion, ECF No. 38. Relying upon Petitioner's lack of treatment from November 2018 through June 2019 (*id.* at 7), he insists "Petitioner has not established

---

[4] Petitioner's declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 12.

2

that her alleged vaccine-related condition persisted for at least six months after vaccination" (*id.* at 8). The matter is now ripe for adjudication.

## II.  Issue

At issue is whether Petitioner has satisfied the Vaccine Act's severity requirement. *See* Section 11(c)(1)(D). Because the case did not involve a vaccine related death or surgical intervention and inpatient hospitalization, Petitioner may satisfy the requirement by establishing that she suffered the residual effects of her alleged SIRVA for more than six months. *See id.*

## III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that

3

happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Finding of Fact

I make this severity finding after a complete review of the record to include all medical records, affidavits, briefing, and additional evidence filed. Specifically, I base the findings on the following evidence:

- At the time of vaccination, Petitioner was healthy 31-year-old with no prior right shoulder issues. Exhibit 1 at 20-24 (record from the June 5, 2018 Genesis Community Health ("GCH") visit when she received the vaccine); *see also id.* at 8-15 (medical history summary).

4

- On June 5, 2018, Petitioner was seen at GCH, located in Boynton Beach, Florida, for a routine check-up. Exhibit 1 at 20-24. She requested (*id.* at 20) and received the Td vaccine in her right deltoid (*id.* at 13, 23).

- Nine days later, on June 14, 2018, Petitioner returned to GCH, complaining of constant pain, ranging from seven to nine, "from [her] elbow upwards." Exhibit 1 at 16. She indicated that the current level of her pain was seven. *Id.* at 17. Attributing her symptoms to the vaccination she received on June 5, 2018, Petitioner reported pain at the site of vaccination that worsened in twelve hours, "travel[ing] to the arm up the elbow." *Id.* at 16. She added that her "[f]orearm and hand [were] fine" but she noticed "involuntary twitching in the right thumb, second and third fingers." *Id.* It was noted that Petitioner was right-handed and worked as a chef. *Id.*

- Upon examination, the treating physician noted right shoulder pain with active abduction and extension. Exhibit 1 at 18. She assessed Petitioner as suffering an adverse reaction to the Td vaccine, "most probably related with local inflammatory muscular reaction after injection." *Id.* Prescribing 15 days of pain medication, the treating physician indicated she would call Petitioner in one week to assess her symptoms at that time. *Id.*

- On June 28, 2018, the GCH treating physician placed a copy of what appears to be a letter sent to Petitioner, indicating attempts to contact Petitioner by phone had been unsuccessful. Exhibit 1 at 19. Petitioner was asked to contact the clinic to schedule a follow-up appointment. *Id.*

- Three months later, on September 11, 2018, Petitioner attended her first physical therapy ("PT") session in Nantucket, Massachusetts. Exhibit 2 at 13-17. Although this record indicates Petitioner was referred by Dr. Timothy Lepore, this notation appears to be an error. *Id.* at 13. In her supplemental declaration, Petitioner indicated that she self-referred to a PT clinic she found using an internet search and paid for the treatment out-of-pocket. Exhibit 12 at ¶ 4. Additionally, she provided a letter from Dr. Lepore's clinic indicating he did not treat Petitioner. Exhibit 11.

- At this initial PT session, Petitioner again attributed her right shoulder pain to the tetanus shot she received in June, indicating she could not move her right arm for two weeks post-vaccination. Exhibit 2 at 13. Estimating the level of her pain as ranging from one to six, Petitioner reported slow improvement but continued soreness, an inability to fully reach overhead,

5

- and difficulty performing her job as a chef. *Id.* She was assessed as having decreased ROM and strength which affected her work ability. *Id.* at 13-15.

- Petitioner reported no change in symptoms at her second and third PT sessions on September 13th and 27th, but decreased pain by her fourth and fifth sessions on October 2nd and 9th. Exhibit 2 at 11, 9, 7, 5 (in chronologic order). However, the level of her pain was not specified. *Id.* at 7, 5 (in chronologic order). It does not appear that Petitioner was discharged from PT. The instruction at the end of her last session on November 9th was to "[c]ontinue current plan." *Id.* at 6.

- One month later, on November 13, 2018, Petitioner visited a PT clinic in Palm Beach Gardens, Florida, complaining of right shoulder pain "ever since" receiving a tetanus shot on June 4, 2018. Exhibit 3 at 18. Although she reported no pain at rest, and no current pain, Petitioner indicated that her symptoms increased if she allowed her arm to remain static. *Id.* at 16, 18. Additionally, overhead movement caused sharp pain as severe as six out of ten and "any type of abduction . . . increas[ed] her pain." *Id.* at 18; *accord. id.* at 16. Petitioner attributed her moderate improvement (from the seven to nine pain levels she reported in June 2018 – Exhibit 1 at 16) to the PT she attended while in Nantucket. Exhibit 3 at 16,18. Assessed as still experiencing limited ROM and decreased strength, Petitioner was instructed to attended PT two to three times a week for four weeks. *Id.* at 20.

- Petitioner did not return to PT until June 3, 2019, more than six months later, when she visited the same provider at a clinic located in Boynton Beach, Florida. Exhibit 3 at 13-15. Indicating that Petitioner previously was seen at the Palm Beach clinic, the visit – identified as her second, was described as a resumption of PT. *Id.* at 13, 15. It was noted that Petitioner exhibited the "same objective findings . . . [and] was advised to see an ortho[pedist] as pain is the same since the injury." *Id.* Petitioner reported pain with sleeping, reaching, and undressing. *Id.* at 13.

- At her next PT session on June 6, 2019, Petitioner reported some soreness after her last session but feeling better that day. Exhibit 3 at 7.

- At her fourth PT session on June 13, 2019, Petitioner reported "feeling good today [with] [n]o new complaints." Exhibit 3 at 5.

6

- On July 12, 2019, Petitioner attended an appointment with a chiropractor at her PT clinic, indicating that she wished to continue PT and chiropractic care. Exhibit 3 at 30. She again attributed her pain to the tetanus shot she received in June 2018. Indicating that her symptoms affected her work as a chef, Petitioner reported constant pain with most ROM. Petitioner also described a "tightness in between [her] shoulder blades [and] ache in [her] neck from compensating [for her] shoulder." *Id.*

- Three days later, Petitioner underwent an MRI ordered by her chiropractor. Exhibit 4. The MRI report indicated Petitioner had experienced symptoms since her tetanus shot in June 2018. *Id.* at 2. The MRI revealed findings which included biceps tenosynovitis, mild edema at several locations, supra and infraspinatus tendinopathy, and an interstitial tear in the distal infraspinatus tendon. *Id.* at 3.

- Petitioner attended two more chiropractic appointments in late July 2019. Exhibit 3 at 23-26.

- In her supplemental declaration, Petitioner explained that she was working as a seasonal employee – a chef, when she received the tetanus vaccine. Exhibit 12 at ¶ 3. She was able to afford PT while working in Nantucket (September through November 2018), but moved back to Florida thereafter. *Id.* at ¶¶ 4-5. Working part-time on various catering projects, Petitioner was unable to resume treatment until the insurance coverage from her new job began.[5] *Id.* at ¶¶ 5-6. During this gap in treatment (from mid-November 2018 through early June 2019), Petitioner indicated that she continued performing the exercises provided to her by her therapist. *Id.* at ¶ 5.

- Attributing her failure to follow-up with an orthopedist as instructed to being "incredibly busy opening a restaurant," Petitioner confirmed that she did not pursue treatment after July 2019. Exhibit 12 at ¶ 7. In March 2020, Petitioner "was laid off due to the pandemic and never resumed PT." *Id.* at ¶ 8.

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that she suffered symptoms of her alleged SIRVA beyond December 5, 2018 (assuming an immediate onset on June 5th). The above medical entries preponderantly suggest

---

[5] In her declaration, Petitioner pinpoints her return to treatment as occurring in October 2019, rather than June 2019, as shown by the medical records. *Compare* Exhibit 12 at ¶ 6 *with* Exhibit 3 at 13-15. Additionally, Petitioner states that she acquired full time employment in Florida in July 2019, but had to wait 90 days for insurance coverage. Exhibit 12 at ¶ 6. Although this timing appears logical when viewed independently, in light of the information contained in Petitioner's medical records these dates are likely simple mistakes - made when the document was being drafted, and not caught by Petitioner before signing.

Petitioner suffered from pain, primarily with movement, through *July 2019* – thus satisfying that severity requirement.

At a minimum, Petitioner's symptoms continued beyond six-months post-vaccination (December 5, 2018). Petitioner's alleged SIRVA injury was improved, but not fully resolved, when she sought additional PT after returning to Florida in November 2018 – more than five months post-vaccination. Exhibit 3 at 16-18. It is unlikely that Petitioner's injury would have fully resolved during the subsequent three-week period. Even when attending PT while in Nantucket, Petitioner realized only moderate improvement – reporting her most severe pain had decreased from nine to six out of ten. *Compare* Exhibit 1 at 16 *with* Exhibit 3 at 16, 18. It is reasonable to infer from the foregoing that Petitioner continued to experience pain with movement, and thus, limitations in ROM, for more than three weeks thereafter.

Additionally, there is sufficient evidence to establish that the symptoms Petitioner reported in June 2019 represented a continuation of her alleged SIRVA injury. Throughout her injury, Petitioner provided the same description of sharp pain with movement, consistently attributing her symptoms to the tetanus vaccine she received. *E.g.,* Exhibit 1 at 16; Exhibit 2 at 13; Exhibit 3 at 18, 30. And there is no indication from any medical provider disagreeing with Petitioner's portrayal of a continuous shoulder injury. Furthermore, Petitioner's profession with accompanying changes in employment and insurance coverage, moves between Connecticut and Florida, and nature of her pain (primarily with movement) provide credible explanations for the gap in treatment from November 2018 through June 2019.

Although Petitioner's symptoms affected her work as a chef (*see*, e.g. Exhibit 2 at 13), she clearly had periods of relief as well. As early as November 2018, Petitioner reported no pain at rest, albeit an increase in symptoms when remaining static. Exhibit 3 at 16. And Petitioner's lack of treatment is indicative of a milder SIRVA injury. These factors suggest any award in this case for pain and suffering should be modest, but it does *not* mean I cannot find the basic requirement of six months severity met. Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her alleged SIRVA for more than six months.

### V.     Scheduling Order

As set forth in his Rule 4(c) Report, Respondent's only objection to compensation was the contention that Petitioner had failed to establish that she suffered the residual effects of her alleged SIRVA injury for more than six months. Thus, he should provide his

current position in light of my finding regarding severity. Additionally, Petitioner should provide Respondent with a reasonable demand and supporting documentation.

**Respondent shall file a status report indicating how he intends to proceed in light of my factual ruling by no later than <u>Monday, August 28, 2023</u>**. In the status report, he also should indicate whether Petitioner has provided him with a demand.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master